IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHAOTIC LABZ, INC.                                                       PLAINTIFF

v.                          No. 4:18-cv-75-DPM

SDC NUTRITION, INC.                                      DEFENDANT

## ORDER

Chaotic sells dietary products to consumers and wholesalers. The products come in capsules and powder, marketed with names such as Warlord, PreAbolic, and NurtrAsylum MS1. SDC manufactures such products. So did a company named Reaction, with whom SDC merged. Chaotic had problems with some Reaction products, problems for which it has sued SDC, standing in for Reaction post-merger. Chaotic also paid a deposit for, but didn't get, some protein products from SDC. Chaotic alleges violations of various UCC warranties, conversion of the deposit, violations of the Arkansas Deceptive Trade Practices Act, and a civil RICO claim. Three motions pend: SDC seeks summary judgment with many and various arguments; in a sequel to a discovery dispute, it requests sanctions; and it makes an unopposed request to continue the trial date.

There's a threshold issue: who is the right plaintiff? SDC points out on several claims that Chaotic's owner, Cordy Hooten, or another related entity, is the one supposedly out of pocket. The record

demonstrates that Hooten is at the center of all this. № 34 at 18, 24–25. Chaotic Labz, Inc., Bloodline Holdings, LLC, and many d/b/a names are all his creatures. He wrote checks from whichever bank account happened to have money, including his own. Hooten's main contact at Reaction, and later at SDC, was Frank Bedoloto. According to Bedoloto, Hooten/Chaotic was the client. № 31-2 at 2. The various disputed transactions have been fully ventilated in discovery. Though the deadline for amending pleadings has passed, the interests of justice favor allowing Chaotic to amend its complaint, adding Hooten and any related affected entities as plaintiffs. FED. R. CIV. P. 15(a)(2); *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). In the circumstances, there's no prejudice to SDC in this clean up.

The warranty claims are for the jury. Chaotic says the seals were bad, and the "best by" date was faulty, on the PreAbolic product. The powder clumped and spoiled. SDC counters that Chaotic accepted it, knowing of the seal defect. Chaotic replies that SDC (speaking through Bedoloto) said the powder was fine for sale and would last. It didn't. All this back-and-forth creates genuinely disputed material facts about acceptance, assurances, and cover.

Chaotic's conversion claim also goes forward. Chaotic has now made clear that it does not want its $18,375 deposit back; it wants net lost profits from these undelivered products. № 39 at 29. The law

allows this. *Shepherd v. Looper*, 293 Ark. 29, 30, 732 S.W.2d 150, 151 (1987). There will be no double recovery.

Chaotic's ADPTA claim goes forward, too. SDC is mistaken in arguing that the Act does not protect Chaotic in business deals like these. It does. *Electrocraft Arkansas, Inc. v. Super Electric Motors, Ltd.*, № 4:09-cv-318-SWW, No. 23, 2009 WL 5181854 at *7 (E.D. Ark. 23 December 2009). Here again, whether SDC actually deceived Chaotic is genuinely disputed.

Chaotic's civil RICO claim fails on this record as a matter of law. SDC argues that the record shows no intent to defraud; Chaotic responds that intent can be inferred. But this record doesn't support that inference. Intent to defraud can often be inferred from the scheme itself. *United States v. Ervasti*, 201 F.3d 1029, 1037 (8th Cir. 2000). Lying to clients about how their money will be invested and then diverting the funds to one's own use; or skimming from clients' segregated tax funds — these types of schemes, perpetrated repeatedly over time, amount to strong circumstantial evidence of intent to defraud. *United States v. Brown*, 627 F.3d 1068, 1072 (8th Cir. 2010); *Ervasti*, 201 F.3d at 1033.

Here, though, the scheme alleged is a series of differing business dust-ups — faulty seals, incorrect best-by dates, tainted products, licensing problems. They show a pattern of loose business and broken promises. And the Court of Appeals has repeatedly turned aside

efforts to deploy civil RICO's big gun—treble damages—in disputes about broken promises and ordinary commercial fraud. *E.g., Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015); *see also Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999) (Easterbrook, J.). These broken promises, in and of themselves, don't amount to the kind of scheme that would support an inference of intent to defraud.

The rest of the record doesn't fill the gap, either. Bedoloto testified, for example, that he had approval from the prior patent holder to use DHEA ingredients in Chaotic's products; things fell apart when the patent was sold. *№ 31-2 at 3–7.* And the buyer confirmed that the seller hadn't been aggressive enforcing the patent. *№ 31-4 at 6.* That is loose business, not fraud. It was a similar situation with the Yohimbe-tainted product: as Hooten said in his initial inquiry to Bedoloto, "[d]irty blender, I would assume." *№ 34 at 12–13.* On the seals, the proof is strong on an SDC mistake plus a broken promise. Bedoloto assured Hooten the product would stay fresh notwithstanding seal problems. *№ 39 at 12–13; № 31-2 at 20–23.* It did not, says Hooten. *№ 39 at 13.* But there is no evidence that Bedoloto knew the product would go bad, but assured Hooten the opposite. In sum, Chaotic has solid claims for the jury arising from this soured business relationship. Taken in the light most favorable to Chaotic, however, there isn't enough evidence to support a reasonable inference of intent to defraud

without resorting to speculation. SDC is entitled to judgment on Chaotic's civil RICO claim.

SDC is correct on many damages issues. First, the record presents no direct evidence of malice in the legal sense, or of willful and wanton disregard, such that malice may be inferred. Therefore, punitive damages are out. *McClellan v. Brown*, 276 Ark. 28, 30, 632 S.W.2d 406, 407 (1982); *compare Dees v. Allied Fidelity Insurance Co. of Indiana*, 655 F. Supp. 10, 13–14 (E.D. Ark. 1985). Second, Chaotic's proof on the lawyer bills related to the FDA's investigation of the Yohimbe-tainted product is insufficiently certain. A few phone calls do not cost approximately $10,000; and Hooten was clear that these lawyers were doing other work for him, too. Third, the approximately $10,000 eventually paid to the new patent holder for DHEA is not recoverable. The evidence here leads to only one reasonable conclusion. Chaotic was going to pay for using this ingredient one way or the other: by paying an increased amount to a manufacturer such as SDC, who would handle payments to the patent owner; or by paying the owner directly. Chaotic has not shown that it ended up paying more than it otherwise would have if SDC had handled things with the new patent owner. Fourth, no mental anguish damages. They can be recovered in an egregious case of conversion. *E.g., Dees*, 655 F. Supp. at 13–14; HOWARD BRILL & CHRISTIAN BRILL, *Law of Damages* § 33:7 at 773 (6th ed. 2014). In light of all the discussions about accepting

replacement products or a credit, SDC's retention of Chaotic's approximately $18,000 deposit after the parties' relationship completely broke down is just one more example of that failed relationship. Most importantly, Hooten's stress was the sum of the whole, especially the $70,000-plus in spoiled PreAbolic. The danger is that the jury would award mental anguish damages based on the whole failed relationship, which the law does not allow, rather than just for any conversion.

The Court declines to award discovery sanctions. Chaotic's belated production on damages mooted that issue. The Court takes Chaotic's lawyer at his word: all non-privileged and non-public information possessed by Chaotic and its lawyers has been produced. The Court's prior Order did not carve out publicly available information, such as the FDA notices, but SDC has them, so there's no prejudice in not producing them. Some Chaotic records were lost in a hard drive crash. This was a random event. Given the parties' developing dispute, Hooten probably should have preserved the computer to see if anything could be recovered. He testified that he didn't because of all the sensitive personal information about customers. Even if his judgment here was mistaken, SDC hasn't shown that Hooten or Chaotic intended to destroy the electronic information to hide facts about this dispute. *Stevenson v. Union Pacific Railroad Company*, 354 F.3d 739, 747–48 (8th Cir. 2004).

* * *

Motion for sanctions, № 28, denied. Motion for leave, № 51, denied as moot. Motion for summary judgment, № 29, partly granted and partly denied as specified. Amended complaint, which only corrects the plaintiff, due by 27 March 2020. The civil RICO claim, and various noted damage claims, drop out. Unopposed motion for continuance, № 55, granted for good cause. The Scheduling Order, № 23, is suspended; an Amended Order will issue. Trial is re-set for 5 October 2020, first out. The Court regrets the delay, but this is the best the Court can do on a crowded docket.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

26 February 2020